# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

DESTINY HOLLAND, as Special Administrator )
of the Estate of Ralph Hal Holland, Jr., Deceased, )
)
        Plaintiff, )
) Case No. 16-CV-349-JED-JFJ
v. )
)
STANLEY GLANZ, et al. )
)
        Defendants. )

## OPINION AND ORDER

Plaintiff, Destiny Holland, Administrator of the Estate of Ralph Hal Holland, Jr., brings this suit against Stanley Glanz in his individual capacity, Tulsa County Sheriff Vic Regalado, the Tulsa County Board of County Commissioners (BOCC), and Armor Correctional Health Services, Inc. (Armor). All defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6).

**I.    Dismissal Standard**

In considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard requires "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555–56, 570 (citations omitted). *Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to claimant. *See Twombly*, 550 U.S. at 555

## II. Plaintiff's Allegations

Ralph Hal Holland, Jr. was arrested in November, 2013. (Doc. 2 at 8, ¶ 14). Prior to his arrest, Mr. Holland had been prescribed medication both for blood pressure and for combatting depression and hip pain. (Doc. 2 at ¶ 14). These medications can cause severe side-effects when use is halted abruptly. *Id.* One of the side-effects is increased suicidal tendencies. *Id.* Upon Mr. Holland's arrest, Plaintiff informed the arresting officers that he needed his medications and was suicidal. (*Id.* at ¶ 16(a)). Mr. Holland was brought to the Tulsa County Jail, where Plaintiff informed officials at the jail that Mr. Holland needed his medications and was suicidal. (*Id.* at ¶ 16(b)). At some point, Plaintiff requested the keys to Mr. Holland's vehicle so that she could retrieve his medications, but jail officials refused to give them to her. (*Id.* at ¶ 14).

Throughout Mr. Holland's detention, Plaintiff made several attempts to get Mr. Holland his medications, but "each attempt was refused by Tulsa County Jail officials despite warnings that abrupt discontinuance of said medications had severe side effects, specifically including increased suicidal tendencies." (*Id.* at ¶ 16(c)). On the evening of November 30, Mr. Holland was severely depressed and expressed to his ex-wife, Charlotte Inge, that he could no longer endure the pain. (*Id.* at ¶ 16(d)). She immediately contacted Tulsa County Jail officials and advised them of his statements and suicidal condition. *Id.* That night, Mr. Holland was left alone in his cell. (*Id.* at ¶ 18). He hung himself and was discovered and pronounced dead on the morning of December 1, 2013. (*Id.*).

Plaintiff alleges that, throughout Mr. Holland's detention, defendants "ignored Mr. Holland's mental condition and failed to provide any care or take any precautions to prevent Mr. Holland from taking his own life." (*Id.* at ¶ 19). She alleges Mr. Holland "was denied his

prescription medications and was not put on suicide watch at any time prior to his death." (*Id.* at ¶ 17).

Plaintiff further alleges that the "deliberate indifference to Mr. Holland's medical and mental health needs was in furtherance of and consistent with the policies" for which then-Sheriff Glanz and Armor had responsibility. (*Id.* at ¶ 20). Plaintiff lists three respects in which the policies were inadequate. First, the defendants allegedly "failed to promulgate and implement adequate medical and mental health policies responsive to the serious medical needs" of inmates. (*Id.* at ¶ 21). Specifically, Plaintiff alleges that "there were deficient guidelines in place as to the standard of care specific to inmates' mental health needs." *Id.* This allegedly constitutes a failure to train and failure to supervise the nurses at the Tulsa County Jail. *Id.* Plaintiff also alleged "failures to conduct appropriate psychiatric assessments, create and implement appropriate mental health treatment plans, [and] promptly evaluate and transfer to an appropriate psychiatric treatment facility" inmates who are a potential danger to themselves. (*Id.* at ¶ 22).

Plaintiff secondly alleges that "the communication policies and procedures for inmates seeking medical treatment" were "inadequate to ensure the timely assessment and treatment of inmates with serious medical needs." (*Id.* at ¶ 23). Plaintiff alleges that Armor and the Sheriff's Department had "a pattern and practice of understaffing" the medical treatment facility. *Id.* The Sheriff's Department allegedly promoted "a policy of having too few personnel on duty at the Tulsa County Jail" to provide adequate treatment for inmates' serious medical and mental health needs. *Id.* Plaintiff thirdly alleges that the Tulsa County Sheriff "restricts [Armor] to very tight budgetary restrictions, creating substantial risks to inmate safety." (*Id.* at ¶ 24).

Plaintiff is suing all defendants under 42 U.S.C. § 1983 for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. She is additionally suing Armor for negligence.

### III.  Claim under § 1983 against Mr. Glanz in his individual capacity

Mr. Glanz argues that he cannot be liable under § 1983 because he is entitled to qualified immunity and lacked actual knowledge of Mr. Holland's risk of suicide. In a § 1983 action, an official sued in his individual capacity is entitled to qualified immunity unless he both violated a constitutional right and that right was clearly established. *Cox v. Glanz*, 800 F.3d 1231, 1246 (10th Cir. 2015). To be clear, "when confronting individual capacity § 1983 claims," a court's "focus must always be on the *defendant*—on the . . . injury *he* inflicted or caused to be inflicted, and on *his* motives." *Id.* at 1254 (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010)) (emphasis in the original). Therefore, Mr. Glanz is entitled to qualified immunity unless his individual conduct deprived Mr. Holland of a constitutional right and that right was clearly established.

Mr. Glanz supports his argument that he is entitled to qualified immunity by arguing that there is no clearly established right to be screened for suicidal tendencies. (Doc. 15 at 5-7). Although Plaintiff does indeed mention the failure to provide a mental health evaluation, Plaintiff's § 1983 claim is primarily based not on a failure to screen for suicide but on a failure to provide adequate medical care, inclusive of mental health care. (Doc. 2 at ¶¶ 29–30) ("Defendants failed to provide an adequate mental health evaluation, timely or adequate treatment and/or adequate supervision . . . . [F]ailure to provide Mr. Holland with adequate and timely medical or psychiatric care . . . [constitutes] deliberate indifference . . . ."). Plaintiff specifically alleges that Mr. Holland's arresting officers and officials at the Tulsa County Jail were informed that he was suicidal. (*Id.* at

¶ 14). She further alleges that she "made several attempts to give Mr. Holland" his medications but "each attempt was refused by Tulsa County Jail officials despite warnings that abrupt discontinuance" could increase his suicidal tendencies (*Id.* at ¶ 16(c)). Additionally, Plaintiff alleges that Mr. Holland's ex-wife told jail officials that he was suicidal but the officials did nothing to protect him. (*Id.* at ¶ 16(d)). These allegations make it clear that Plaintiff's § 1983 claim is based on jail officials repeatedly refusing to give Mr. Holland his medication even as they knew he was suicidal.

"[C]laims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Barrie v. Grand Cty.*, 119 F.3d 862, 866 (10th Cir. 1997). The Tenth Circuit recognizes that prison officials are required to provide adequate medical care under the Eighth Amendment. *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Eighth Amendment protection extends to pretrial detainees under the Fourteenth Amendment. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985)).

However, in order for Plaintiff's suit against Mr. Glanz to succeed against his claim of qualified immunity, it is not sufficient that a clearly established right was violated by just anyone. Mr. Glanz specifically must have violated that right. Plaintiff provides two rationales under which Mr. Glanz might have contributed to Mr. Holland's denial of medical care. First, she alleges personal involvement on his part. Second, she argues under a theory of supervisory liability that Mr. Glanz "promulgated, created, implemented and/or possessed responsibility for" the "customs, practices and policies" that resulted in Mr. Holland's death. (Doc. 2 at ¶ 34).

For personal involvement on Mr. Glanz's part, Plaintiff states that "Defendants knew or reasonably should have known there was a strong likelihood that Mr. Holland was in danger of

serious personal harm and that he would try to harm himself." (*Id.* at ¶ 28). She further states that "Defendants failed to provide . . . timely or adequate treatment." (*Id.* at ¶ 29). These allegations are insufficient to state a claim against Mr. Glanz. Although a court must accept all the well-pleaded factual allegations of a complaint as true, a complaint still must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555. Plaintiff's allegations about Mr. Glanz's personal involvement are merely conclusory. Nowhere in her Amended Petition does Plaintiff allege that Mr. Glanz himself had any personal knowledge of Mr. Holland at all. Rather, she alleges that "the arresting officers" and "Tulsa County Jail officials" were made aware of Mr. Holland's need for medication and that "Tulsa County Jail officials" stopped her from providing Mr. Holland with his medications. (Doc. 2 at ¶ 16(a), (c)). Plaintiff has not pleaded any facts from which Mr. Glanz's personal involvement could be inferred.

Mr. Glanz also cannot be held liable under a theory of supervisor liability. In supervisory liability cases, the Tenth Circuit "continue[s] to require plaintiffs to demonstrate 'that each defendant acted with the constitutionally requisite state of mind.'" *Cox*, 800 F.3d at 1249 (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). In the jail suicide context, the requisite state of mind "is a *particularized* state of mind: actual knowledge by a prison official of an individual inmate's substantial risk of suicide." *Id.* Plaintiff asserts that she

> need not show actual knowledge of Holland's suicide risk in order to assert liability under Section 1983 at this stage of this litigation. It is enough that Holland has alleged his daughter and his ex-wife repeatedly reached out to officials with the Tulsa County Jail to alert them as to his mental state, along with the necessity for his prescription medications.

(Doc. 16 at 6). However, Plaintiff provides no authorities or citations for these assertions, which are contrary to the rule announced in *Cox* for jail suicide cases. Because Plaintiff never alleges

6

that Mr. Glanz even knew of Mr. Holland, let alone of Mr. Holland's suicide risk, Mr. Glanz cannot be held liable under a theory of supervisory liability.

Plaintiff does not indicate that, if permitted to amend, she would be able to plead any facts of Mr. Glanz's personal involvement or particularized state of mind, as would be required to state a plausible claim against Mr. Glanz in his individual capacity. Mr. Glanz's motion to dismiss (Doc. 15) is therefore **granted**, and Plaintiff's claims against him are dismissed without leave to amend.

## IV. Claim under § 1983 against Sheriff Regalado

Sheriff Regalado replaced the former sheriff, Mr. Glanz, and the Court substituted Sheriff Regalado into the suit on the official capacity claim. Accordingly, the Court will consider the official capacity arguments presented in the dismissal motion originally filed by Mr. Glanz, as those arguments are now applicable to Sheriff Regalado in his official capacity.

In the § 1983 context, a claim against a state actor in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). To hold a municipality liable under § 1983, a plaintiff must prove (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. "whether there is a direct causal link between [the] policy or custom and the alleged constitutional deprivation"). *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (citations omitted); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The Sheriff argues that "Plaintiff's Amended Petition does not specifically allege *any* policy or custom that caused the violation of his constitutional rights." (Doc. 18 at 2). The Sheriff further characterizes Plaintiff's suit as attempting to hold a municipality liable "*solely* because it

7

employs a tortfeasor." *Id.* However, while Plaintiff indeed could have been more specific in identifying a policy, Plaintiff does more than rely on a theory of *respondeat superior*. Plaintiff states that, during Mr. Holland's detention, "there were deficient guidelines in place as to the standard of care specific to inmates' mental health needs" and that this "utter lack of guidance for nurses to follow . . . as to the standard of care . . . demonstrates a failure to train, failure to supervise and deliberate indifference toward known risks." (Doc. 2 at ¶ 21). She further states that the failure to train manifested in failures to "create and implement appropriate mental health treatment plans" and "to take precautions to prevent suicide among high risk and mentally ill inmates." (Doc. 2 at ¶ 22).

Plaintiff further alleged communication policies, a pattern of understaffing in medical treatment, a policy of failing to provide timely medical care, including mental health care, and budgetary restrictions on the medical care provider, creating substantial risks to inmate safety. (*See id.* at ¶¶ 23, 24). According to the allegations of the Amended Petition, the Sheriff also had a practice of failing to promptly evaluate and transfer suicidal jail inmates to appropriate psychiatric treatment facilities. (*Id.* at ¶ 35(f)).

Taking these allegations as true, as is required at the pleading stage, the Plaintiff's allegations are sufficient to plausibly assert a municipal policy that was the moving force behind the alleged constitutional deprivation. The causal link is straightforward. Plaintiff alleged that the jail was understaffed in medical, that staff were not trained to provide medication for detainees even when they were aware of a detainee's specific medical need. Mr. Holland committed suicide after being denied medication, "abrupt discontinuance" of which has "severe side effects, specifically including increased suicidal tendencies." (Doc. 2 at ¶ 16(c)). Additionally, some of his medication was for depression. (*Id.* at ¶ 14). Jail officials were even allegedly warned of Mr.

8

Holland's suicidal condition but took no action, resulting in an alleged violation of Mr. Holland's rights under the Eighth and Fourteenth Amendments. (*Id.* at ¶ 16).

Plaintiff has stated a plausible official capacity claim against Sheriff Regalado under *Monell*. Consequently, Sheriff Regalado's motion to dismiss (Doc. 15) is **denied**.

V.      **Claim against the BOCC**

The BOCC moves for dismissal, arguing that Plaintiff failed to state a claim against it. Because Plaintiff "does not object to dismissal" of the BOCC (Doc. 16 at 4), the BOCC's motion to dismiss (Doc. 15) is **granted**.

VI.     **Claims against Armor**

Armor asserts two grounds for dismissal. First, it argues that it was not timely served. Second, it argues that Plaintiff has failed to state a claim.

A.      **Service of Process**

Armor argues that it was not served. (Doc. 14 at 9). Plaintiff filed her initial Petition in the Tulsa County District Court on November 30, 2015, and filed an Amended Petition on May 26, 2016. Before this action was removed on June 14, 2016, the Plaintiff served Armor through its registered agent, the Oklahoma Secretary of State, on May 26, 2016, which was accepted by the Secretary of State on June 1, 2016. (Doc. 17-1, 17-2). "Where service is effected prior to removal to federal court," the courts "look to state law to determine if service was perfected." *Palzer v. Cox Oklahoma Telecom, LLC*, 671 Fed. App'x. 1026, 1028 (10th Cir. 2016) (unpublished) (citing *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010)). As service was made on May 26, before removal on June 14, the 180-day service deadline under Oklahoma law applied. Armor was therefore timely served.

B. Section 1983 Claims

Armor argues that Plaintiff has failed to plead sufficient facts to show that Mr. Holland suffered a constitutional violation attributable to Armor. Armor further argues that it cannot be liable because it could not have acted under color of law, as required under § 1983. Armor also argues that it cannot be liable on a theory of either vicarious or municipal liability.

Plaintiff provides two rationales under which Armor allegedly provided unconstitutionally inadequate care. First, Plaintiff cites failures to treat Mr. Holland's mental illness and to provide him with his medication even when Armor knew, or should have known, that he was suicidal. Second, Plaintiff cites a more general failure to evaluate Mr. Holland's mental health.

Plaintiff correctly states that "[u]nder the Eighth Amendment, prisoners possess a constitutional right to medical care, and that right is violated when doctors or officials are deliberately indifferent to a prisoner's serious medical needs." (Doc. 17 at 10–11). Deliberate indifference "involves both an objective and a subjective[1] component." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002). The objective component is met when "the 'harm suffered rises to a level "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment." *Martinez*, 563 F.3d at 1088 (quoting *Mata v. Saiz*, 427 F.3d 745, 752–53 (10th Cir. 2005). The subjective component is met when "the official

---

[1] In 2015, in *Kingsley v. Hendrickson*, the Supreme Court "held that the Eighth Amendment standard for excessive force claims brought by prisoners, which requires that defendants act 'maliciously and sadistically to cause harm,' does not apply to Fourteenth Amendment excessive force claims brought by pretrial detainees." *Estate of Vallina v. Cty. of Teller Sherriff's Office & Its Det. Facility*, 757 Fed. App'x. 643, 646 (10th Cir. 2018); *see Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). Since then, the "Second, Seventh, and Ninth Circuits have interpreted *Kingsley* as displacing prior subjective requirements" for "inadequate medical care claims brought by pretrial detainees." *Estate of Vallina*, 757 Fed. App'x. at 646. "Those courts have adopted [a purely] objective test requiring reckless disregard." *Id.* The Fifth, Eighth, and Eleventh Circuits have declined to extend *Kingsley*. *Id.* The Tenth Circuit has thus far declined to address the application of *Kingsley*. *E.g., Crocker v. Glanz*, 752 Fed. App'x. 564, 569 (10th Cir. 2018).

'knows of and disregards an excessive risk to inmate health or safety.'" *Mata*, 427 F.3d at 751 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Armor admits Mr. Holland's death satisfies the objective component. (Doc. 19 at 3). However, Armor argues that the Plaintiff has not pleaded sufficient facts to satisfy the subjective component of deliberate indifference. For the subjective component to be satisfied, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "also draw the inference." *Mata*, 427 F.3d at 751. Nowhere in her Amended Petition does Plaintiff identify facts that plausibly allege that Armor was aware of facts from which it should have known of a substantial risk of a serious harm to Mr. Holland. Instead, Plaintiff only alleges that arresting officers and "jail officials" were informed of Mr. Holland's suicidal condition and need for medications. (Doc. 2 at ¶¶ 14, ¶ 16(a), 16(b)). She also alleges that she requested that Mr. Holland be provided with his medications, but she did not identify to whom she made this request. (Doc. 2 at ¶ 14). She generically alleges that "officials at Tulsa County Jail denied Mr. Holland his prescribed medications." *Id.* She similarly does not specify from whom she "requested the keys to her father's vehicle so she could retrieve Mr. Holland's prescribed medications," and notes only that "jail officials refused to give her the keys." *Id.* Her "several attempts to give Mr. Holland" his medications were "refused by Tulsa County Jail officials." (Doc. 2 at ¶ 16(c)). Mr. Holland's ex-wife also "contacted Tulsa County Jail officials" to warn them of Mr. Holland's suicidal condition. (Doc. 2 at ¶ 16(d)).

The foregoing allegations against "jail officials" and arresting officers do not encompass Armor or medical staff at the Jail. Plaintiff has not alleged that medical staff were made aware of Mr. Holland's needs. Indeed, Plaintiff admits "it is impossible for Holland to know if there [*sic*] risks and concerns were reported to anyone with Armor." (Doc. 17 at 10).

11

Plaintiff's remaining statements by which one might infer Armor's knowledge of Mr. Holland's suicidal condition are impermissibly conclusory. Plaintiff states that "Defendants were aware of Mr. Holland's mental health condition, suicidal tendencies and other serious psychological problems." (Doc. 2 at ¶ 15). She also argues that "[i]nformation provided by Mr. Holland's family and friends, as well as Mr. Holland's own statements and behavior, put Defendants on notice of excessive risks to Mr. Holland's safety." (*Id.* at ¶ 19). Neither of these allegations provide information about Armor or any of its employees. Such statements do not constitute anything more than the "labels and conclusions," which are insufficient under *Twombly*. *See Twombly*, 550 U.S. at 555.

Thus, Plaintiff has failed to allege that Armor knew of and disregarded an excessive risk to Mr. Holland's health or safety, and the subjective component of deliberate indifference is not satisfied. *See Mata*, 427 F.3d at 751. Without a showing of deliberate indifference, any inaction on Armor's part cannot be said to be a violation of the constitutional right to receive medical care.

Plaintiff has also not shown that a failure to evaluate a patient's mental health is a constitutional violation. In her Claims for Relief, Plaintiff states that "Defendants failed to provide an adequate mental health evaluation, timely or adequate treatment and/or adequate supervision for Mr. Holland." (Doc. 2 at ¶ 29). She further states that "aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Mr. Holland's serious medical needs . . . were the direct and proximate result of customs, policies, and/or practices" of Armor. (Doc. 2 at ¶ 44). Among these policies, customs, or practices is "[t]he failure to conduct appropriate psychiatric assessments." (Doc. 2 at ¶ 45(d)). Furthermore, in her Response in Opposition to the Motion to Dismiss of Defendant Armor Health Services, Inc., Plaintiff argues Armor's lack of knowledge of

Mr. Holland is irrelevant because the Oklahoma Administrative Code requires medical triage screening on all prisoners upon admission. (Doc. 17 at 16); Okla. Admin. Code § 310:670-5-8.

Plaintiff provides no authority that failing to conduct a proper mental health screening is a *per se* constitutional violation. In 2015, the Tenth Circuit concluded that such a right had not been declared. *See Cox*, 800 F.3d at 1247. This Court knows of no case since then identifying a constitutional right to receive a medical assessment.

Because Plaintiff has failed sufficiently to allege that Armor knowingly withheld medical treatment, Plaintiff has not alleged any constitutional violation on Armor's part. Furthermore, because Plaintiff has not alleged wrongdoing by any Armor personnel, no claim has been stated under *Monell*. *See Monell*, 436 U.S. 658. Without an underlying constitutional violation, municipal liability does not apply. *Olsen*, 312 F.3d at 1317–18. Because Plaintiff has not shown an underlying constitutional violation attributable to Armor, Armor cannot be held municipally liable.

### C. State Law Claims

In support of dismissal of Plaintiff's negligence claim, Armor argues that (1) it is immune from suit under the Oklahoma Governmental Tort Claims Act (GTCA), (2) the Constitution of Oklahoma does not provide relevant protections to Mr. Holland since he was a pretrial detainee, (3) Plaintiff cannot establish a negligence claim since Mr. Holland's suicide was unforeseeable, and (4) all state law claims are barred by the statute of limitations. Because the Court concludes that Plaintiff's state law claim against Armor is barred by the GTCA, the Court need not determine Armor's other arguments.

The GTCA provides that "[t]he state, its political subdivisions, and all of their employees . . . shall be immune from liability for torts." *Okla. Stat.* tit. 51, § 152.1. "[L]icensed medical

professionals under contract with city, county, or state entities who provide medical care to inmates or detainees" are considered employees under the GTCA. *Okla. Stat.* tit. 51, § 152(7)(b)(7). Plaintiff argues that this immunity does not apply because Armor itself is neither an employee nor a licensed medical professional.

In *Barrios v. Haskell Cty. Pub. Facilities Auth.*, the Oklahoma Supreme Court assumed that a corporate healthcare provider and its staff would count as "employees" under § 152(7)(b). *Barrios v. Haskell Cty. Pub. Facilities Auth.*, 432 P.3d 233, 236 n.5 (Okla. 2018). In doing so, the court noted that "[g]enerally speaking, the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA." *Id.* Relying on *Barrios*, courts in this district have repeatedly held corporate medical providers, including Armor, to be "employees". *See Burke v. Regalado*, No. 18-CV-231-GKF-FHM, 2019 WL 1371144, at *2–3 (N.D. Okla. Mar. 26, 2019); *Birdwell v. Glanz*, No. 15-CV-304-TCK-FHM, 2019 WL 1130484, at *9–10 (N.D. Okla. Mar. 12, 2019) ("the *Barrios* holding provides a strong indication that the Oklahoma Supreme Court would find both Armor and its employees . . . to be 'employees' under the GTCA who are entitled to immunity from tort liability."); *Prince v. Turn Key Health Clinics, LLC*, No. 18-CV-282-CVE-JFJ, 2019 WL 238153, at *9 (N.D. Okla. Jan. 16, 2019) (finding "persuasive the [*Barrios*] court's reasoning for assuming that Turn Key is an 'employee'" which is, "therefore, immune from tort liability").

In accordance with the foregoing authorities, the Court determines that Armor is an "employee" under the GTCA and is therefore immune from suit under *Okla. Stat.* tit. 51, §§ 152(7)(b) and 153(A).

## VII. Conclusion

For the foregoing reasons, the motion of the Tulsa County defendants (Doc. 15) is **granted in part and denied in part**, as follows. Mr. Glanz's motion to dismiss the claims brought against him in his individual capacity is **granted**. Plaintiff's claims against him are dismissed, without leave to amend. Sheriff Regalado's motion to dismiss the official capacity claim is **denied**. The BOCC's motion to dismiss is **granted**.

Armor's motion to dismiss (Doc. 14) is **granted**. If Plaintiff elects to do so, she may file an amended pleading by **October 15, 2019** in an attempt to cure the deficiencies as to her § 1983 claim against Armor.

SO ORDERED this 30th day of September, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT